Justice GOLDBERG,
concurring in part and dissenting in part.
I respectfully dissent from that portion of the majority decision that adopts the recommendation of the Disciplinary Board of the Rhode Island Supreme Court (the board) that the respondent be suspended from the practice of law for a period of one year. I do not undertake this dissent lightly, but do so in accordance with my firm belief that the duty to protect the integrity of this profession rests with this Court and, in light of that responsibility, the sanction adopted by the majority is inadequate and fails to respond to the egregious nature and sheer number of material misrepresentations made by the respondent and, importantly, also ignores the respondent’s conduct before the board.
Having carefully reviewed the entire record in this proceeding and in light of the recommendation of disbarment by Assistant Disciplinary Counsel who prosecuted the petition, I cannot agree with such a minimal sanction, which, in my opinion, does little to further any of the Court’s well-established goals in imposing attorney discipline. In the face of this egregious misconduct, this sanction does scant justice and overlooks-the sad fact that'this lawyer of many years refuses or is unable to accept the authority of the Supreme Court over the conduct of attorneys. In my opinion, this sanction amounts to a slap on the wrist.
I begin by noting that, before the board, Assistant Disciplinary Counsel advocated that respondent should be disbarred. The board found, by clear and convincing evidence, that respondent violated the Rules of Professional Conduct in each and every count of the petition. The board also rejected respondent’s conspiracy-theory defense and his “unsupported and inflammatory assertions * * * that he [was] being subjected to disciplinary action and/or persecuted because of his controversial positions on constitutional issues,” and it concluded that his “arguments and suppositions [were] mere sophistry which [did] nothing to dissuade [the board] from its conclusion.”
Next, the board recommended a suspension from the practice of law for a period of one year, but did not set forth any reasoning for this recommendation. The board also failed to address the recommendation of Assistant Disciplinary Counsel that respondent be disbarred. It is this aspect of the board’s decision with which I take issue. I join the majority in commending the board, and particularly the members of the panel, for their herculean efforts in this matter and for the fine work of the Court’s Assistant Disciplinary Counsel and Deputy Disciplinary Counsel. However, it is this Court’s responsibility to impose discipline that responds to the circumstances of the -cáse. See In re Schiff, 677 A.2d 422, 424-25 (R.I.1996) (refusing to adopt a recommendation of public censure for an attorney who filed a false fee affidavit and instead imposing an eighteen-month suspension).
In his memorandum to this Court—a copy of which is attached to this opinion as an Addendum—Assistant Disciplinary Counsel acknowledged the board’s recommendation of a one-year suspension; but, *1152 nonetheless, in light of respondent’s serial violations of misconduct, he argued “that the severity of [rjespondent’s actions as well as the lack of mitigation factors[,] coupled with his utter disregard for not only this process, but this Court’s authority and the protection of not only the integrity of the profession^] but the public as well[,] warrants a significant sanction beyond the one (1) year suspension recommended by the [b]oard.” (Emphasis added.) I concur.
It is my belief that, when imposing attorney discipline, this Court should look to the totality of the circumstances, including the proceedings before the board. Indeed, the level of cooperation before the board and respondent’s cooperation with Disciplinary Counsel are factors that generally are brought to this Court’s attention in disciplinary matters.
This was not an easy road for Assistant Disciplinary Counsel. The respondent challenged his authority at every level as an ultra vires appointment by this Court. His integrity was assailed, he was referred to on numerous occasions by respondent as a “hit man for the * * * Supreme Court,” who was hired to “search and destroy” him; and, significantly, he alleged that, as a practicing lawyer, Assistant Disciplinary Counsel could expect favorable advantage because of his service to this Court. Assistant Disciplinary Counsel was sued four times—three times in federal court and once in Superior Court. ■ The level of vilification directed by respondent toward anyone connected with the investigation and prosecution of this case, including the chair of the panel and the Court’s Deputy Disciplinary Counsel and Assistant Disciplinary Counsel, is shocking and should not be overlooked by this Court.
I share Assistant Disciplinary Counsel’s concern that, in addition to the unassailable findings of misconduct “demonstrating] a lack of candor amounting to dishonesty in dealing with various tribunals” and respondent’s “refusal or inability to recognize his obligations under the Rules of Professional Conduct[,]” respondent also violated a direct order from this Court prohibiting him from practicing law in the corporate form and thereafter engaged in a course of conduct, throughout these proceedings, in which he consistently and blatantly sought to “circumvent this Court’s authority over his law practice!)]”
By way of apparent mitigation of respondent’s misconduct, the majority notes that respondent has been a member of the bar for many years and has performed pro bono services during that time. This mitigation does not tip the scales for me.
To this day, respondent has failed to produce the documents sought by Assistant Disciplinary Counsel in defiance of a lawfully issued subpoena, on the ground that Assistant Disciplinary Counsel had no authority to issue it. He moved to quash the subpoena, not before this Court, but before the board, the day before the return date. He appeared at the deposition and flatly refused to produce the records. His statement to the board about why he refused to produce the sought-after records is emblematic:
“I did bring the records, I did not give them to him because, as I have said before, he’s an employee hired by the Supreme Court who has no authority to do this. And I then filed a lawsuit against him in Federal Court. So I met the request even though I thought he had no statutory or constitutional authority [to] do anything of the kind. He’s not an Assistant Disciplinary Counsel. He’s a hired gun by the Rhode Island Supreme Court by cont[r]act. He gets paid an hourly fee and he has no authority [to] do depositions or to request subpoenas.” (Emphasis added.)
*1153 In my opinion, the fact that Assistant Disciplinary Counsel resorted to issuing subpoenas for respondent’s bank records is of no moment' to this discussion. The respondent should have been suspended from the practice of law for noncompliance with Article V, Rule 1.19 of the Supreme Court Rules of Professional Conduct like every other attorney who fails to. comply with Rule 1.19. In no event should respondent be readmitted to the practice of law until he produces all records that were subject to subpoena.
As noted, during the course of these proceedings, respondent filed numerous lawsuits against the Chief Justice, the board, Assistant Disciplinary Counsel, and various court employees challenging the authority of the board and Assistant Disciplinary Counsel. Finally, after hearings that spanned over one year, the board issued its findings and submitted its recommendation to this Court. We issued an order directing respondent to appear before this Court in order to respond to the findings of the board. In response, respondent moved to recuse the members of this Court based on bias, unethical conduct, and a violation of his right to due process. Next, he filed yet another federal lawsuit—his third—seeking to restrain this Court from proceeding. That complaint was entitled “COMPLAINT TO STAY SUSPENSION OF PLAINTIFF FROM PRACTING [sic] LAW FOR HIS ACTS IN FILING FEDERAL BANKING [sic] PROCEEDING, ANSWERING FEDERAL ADVERSARY PROCEE-DURES [sic], CHALLENGING UNCONSTITUTIONAL ACTS IN FEDERAL COURT.” The respondent’s rambling discourse in this pleading, as well as his conduct in his appearances before the panel of the board, convince me that he has no insight into his obligations as a member of the bar or the gravity of his dishonesty and attorney misconduct.
In this eleventh-hour salvo, respondent alleged that the Supreme Court was not an adequate or fair forum to hear this matter; that the Court has no authority to suspend respondent in the absence of a complaint from a client or a judge or the Bankruptcy Trustee; that the Rules of Professional Conduct are “unconstitutional”; and that Assistant Disciplinary Counsel, at the direction of his client, this Court, has undertaken “an otherwise unfounded and unconstitutional pre-textual administrative inquisition of the [p]lain-tiff s practice of law to seek possible technical violations of the Rule[s] * * * of Professional Conduct!.]” He alleged that this Court has no authority over lawyers “outside of the walls of the R.I. Supreme Court, and in particular within the U.S. Bankruptcy Court”; and that the appointment of Assistant Disciplinary Counsel was in retaliation for respondent’s exercise of his rights under the First Amendment.
I pause to note that respondent, clearly and unequivocally, has every right to express his opinions about the members of this Court, the constitution, and his version of the separation of powers in this state and the United States; he even is free to amalgamate those doctrines as he often does. See, e.g., In re Application of Roots, 762 A.2d 1161, 1170 (R.I.2000). Nonetheless, he must comply with the Rules of Professional Conduct.
The respondent was found by the board to have filed numerous motions out of time, which were declared to be specious and designed to delay the tribunal. He continued to file the same motions and make the same arguments ad nauseam. The respondent contended that the numerous allegations in the petition filed by Disciplinary Counsel amounted to “pettifoggery” and “frivolous little things” taken out of context. He also accused, without *1154 apparent foundation or good-faith basis, Barbara Margolis, the Court’s Deputy Disciplinary Counsel, of participating in the discussions and deliberations of the board. Ms. Margolis did not attend any deliberations or discussions of the board, and respondent was admonished by the Chair.
On numerous occasions respondent moved the Chair to recuse herself, based on his contention that her evidentiary rulings demonstrated bias. At the conclusion of the hearings before the board, respondent refused to rest his case. He had no further witnesses to call. When asked if he had any other exhibits to introduce, he stated that he did, but that the Chair would “have to wait until I get them.” When informed that the exhibits were required to be produced later that day, respondent refused to produce any further evidence and refused to rest his case. The Chair declared the evidence closed. The respondent’s actions before the board, in my opinion, amounted to unprofessional conduct in violation of Article III, Rule 6(e) of the Supreme Court Rules of Disciplinary Procedure.[1]
The respondent’s conduct, his multitude of lawsuits challenging the authority of this Court, his deceitful behavior and lack of candor—as set forth in the petition and findings of the board—his refusal to cooperate with Disciplinary Counsel, and his disobedience to a lawfully issued subpoena duces tecum, merit a significantly longer period of suspension and an order that respondent must reapply for admission to the bar, must produce the records demanded by the subpoena, and must demonstrate his fitness to practice law, including his obligation to comply with the Rules of Professional Conduct. Unless he is able to do that, respondent should be deemed unfit to practice law.
The respondent’s personal opinions about the current or former members of this Court have no bearing on my opinion in this case, nor do his quixotic ramblings concerning his view of our constitutional structure. The judicial power rests with this Court. The respondent’s view of the state’s separation of powers as including overlapping responsibilities and authority among the branches is irrelevant in the context of attorney regulation and discipline. Moreover, respondent’s flexible and fluid arguments about this state’s constitutional structure do not serve as a shield against his perfidious conduct or block scrutiny by this Court.
In addition to respondent’s behavior during the course of this investigation, my concern about the inadequate penalty also extends to the breadth and nature of his misconduct that led to the petition. It is important to note that the petition filed by Disciplinary Counsel did not concern merely one event or proceeding. The violations of the Rules of Professional Conduct did not involve a client or any zealous advocacy by respondent to protect the rights of a client. This disciplinary petition solely dealt with respondent’s operation of his law practice and his behavior before the state and federal tribunals concerning his own affairs.
In count 1, the board noted that respondent admitted that he was not insolvent, but he filed two bankruptcy petitions solely to obtain a stay of an order in the *1155 Workers’ Compensation Court that compelled him to pay money to a former employee. This action was taken in order to impede the Workers’ Compensation proceeding. The respondent then filed an application with this Court for permission to practice law as a limited liability company (LLC). This Court issued an order prohibiting respondent from practicing law in any corporate form until he certified that he was no longer practicing law as Keven A. McKenna, PC. He defied this order, changed the name of the corporation to McKenna Support Services, LLC, and continued to practice law under that corporate form. Significantly, practicing law as McKenna Support Services, LLC constitutes the practice of law as an LLC, the very conduct this Court proscribed. The respondent failed to change his bank account, continued to deposit client checks and draw funds for operating expenses from that account, and did so until he was advised that a subpoena had issued for his banking records. He then filed a federal lawsuit seeking to quash that subpoena.
The board found that respondent held himself out as an LLC in violation of an express order from this Court. The board also found respondent’s attempts to justify his conduct and “minimize the gravity of his diversion from the applicable disciplinary rules, as palpably disingenuous.” (Emphasis added.) Standing alone, this finding warrants further suspension. This Court frequently is asked by Disciplinary Counsel to consider an attorney’s lack of candor to Disciplinary Counsel and the board during a disciplinary proceeding.
Count 2 of the petition focused on respondent’s unprofessional conduct before the Bankruptcy Court—in failing to disclose income, misrepresenting his interest in a receivable, and engaging in conduct that amounted to a lack of candor and dishonesty—and in his failure to cooperate with the U.S. Trustee’s investigation. The respondent failed to report the receivable in his sworn statement to the Bankruptcy Court and to his own attorney. He unilaterally, and without notice to the Bankruptcy Trustee, filed a motion for a whopping attorney’s fee and filed an affidavit, in the Town of Bristol Probate Court, designed to place a lien against the probate estate of a former client. He got caught. The U.S. Trustee filed an adversary complaint against him and objected to any discharge. In response to this complaint, respondent proceeded to commit even more violations of the Rules of Professional Conduct, including lack of candor and actions intended to disrupt the proceeding. In his answer to the adversary complaint, respondent refused to admit or deny basic information, including his refusal to admit that copies of his own pleadings were true and accurate copies. He also failed to comply with a subpoena to produce records.
In addressing count 2, the board made a plethora of adverse findings against respondent, including that he “made serial misstatements and misrepresentations regarding his financial affairs, or omitted material facts which he was under an obligation to disclose under sworn statement in the Bankruptcy Court and in testimony at hearing on the instant [pjetition.” The board set forth seven separate material misrepresentations with respect to this receivable. Additionally, the board found that respondent “engaged in a course of conduct deliberately designed to hide the existence, value and collectability of the Wells Receivable. This course of conduct included the making of false statements of material fact, the failure to disclose material facts and the offering of evidence that the Respondent knew to be false.” The board concluded that this conduct simply cannot be countenanced. The board also declared:
“It is unfathomable that the serial misrepresentations and omissions of ma *1156 terial fact, as unearthed and presented in this case, and which we find established by clear and convincing evidence, would occur without a mindset purposely predisposed to preventing the disclosure of assets which [respondent] deliberately attempted to hide from creditors, including the Bankruptcy Trustee.”
The board also found that respondent’s conduct was intended to and did disrupt the tribunal. The board also rejected, as ringing hollow, respondent’s tired refrain that neither the board nor this Court has jurisdiction over lawyers in federal court proceedings. See In re Schiff, 677 A.2d at 424 (attorney disciplined for filing false document in United States District Court for the District of Rhode Island).
Count 3 relates to respondent’s unprofessional conduct with respect to a deposition conducted by Assistant Disciplinary Counsel and respondent’s subsequent refusal to maintain records as mandated by Rule 1.19. The respondent was served with a lawfully issued subpoena directing him to appear and bring certain records and to testify with respect to the veracity and completeness of the records produced. He refused to do so. The night before the scheduled deposition, he moved to quash the subpoena on the ground that Assistant Disciplinary Counsel did not have the authority to conduct the disciplinary investigation. The board could discern no credible authority to support this assertion and found that respondent refused to comply with the subpoena in violation of Rule 1.19 and, further, that he engaged in obstreperous tactics and conduct before the board. This conduct is unacceptable. Attorneys are required to cooperate in any investigation by Disciplinary Counsel or face serious consequences. This Court has not hesitated to respond appropriately when called upon to do so. See In re D’Ambrosio, 29 A.8d 1241, 1241-42 (R.I.2011) (mem.) (suspending respondent from the practice of law for failure to comply with a duly authorized subpoena directing him to provide financial records to Disciplinary Counsel in connection with a disciplinary complaint); In re Williams, 791 A.2d 486, 486 (R.I.2002) (mem.) (disbarring an attorney—after an initial suspension—for disregard of the Court’s order to comply with subpoenas issued in connection with a disciplinary investigation).
Count 4 brings us to yet another forum, the Workers’ Compensation Court, where respondent disrupted the proceedings, failed to exhibit candor, accused the Chief Judge of bias against him, and threatened the Chief Judge, declaring that he was “suing you personally because you’re trying to make, take money out of my pocket. I’m going to take money out of your pockets.” The board found that respondent was flippant, evasive, dilatory, and disruptive when he refused to disclose his home address to the Workers’ Compensation Court, noting that documents he filed in the Bankruptcy Court, the Office of the Secretary of State, and in everyday correspondence included the number and name of the street address he refused to disclose to the court. Additionally, the board found that respondent refused to admit the existence of pretrial orders that were part of the court record and refused to answer straightforward questions and feigned a lack of recollection of his claim for a trial and feigned a lack of understanding of simple questions. The board found that respondent was “deliberately and unnecessarily disruptive and dilatory, disrespectful to the [c]ourt[,] including the judge and opposing counsel, combative, evasive, unresponsive, disputatious and pugnacious in both his testimony and in his actions as counsel for himself before the Workers’ Compensation Court * *
Accordingly, based on the numerous, indeed successive and escalating, incidents *1157 of dishonesty and unprofessional conduct committed by respondent, all of which related to his conduct as an attorney and officer of this Court, I am of the belief that a suspension of one year does not respond to the seriousness of the "violations, their number, or their scope. Although this Court appropriately accords deference to the recommendations of the board, we also pay close attention to the arguments of the Disciplinary Counsel, who have an opportunity to appear before the Court when discipline is recommended. In this instance, although acknowledging the recommendation of Assistant Disciplinary Counsel, the board failed to set forth any discussion of its reasons for rejecting the recommendation and instead recommended a suspension of one year.
In appropriate cases, this Court has elected not to adopt the recommendation of the board. See In re Schiff, 677 A.2d at 424-25 (declining to follow the board’s recommendation of a public censure and imposing an eighteen-month suspension for filing a false fee affidavit in federal court); List v. Resmini, 603 A.2d 321, 324 (R.I. 1992) (rejecting the board’s recommendation of a sixty-day suspension and ordering a suspension of one year for filing a false jurat). In Carter v. Muka, 502 A.2d 327 (R.I.1985), this Court initially suspended and, after a lengthy evidentiary proceeding before the full Court—which was necessary because a respondent filed suit against the entire disciplinary board—subsequently disbarred Betty Muka for, among other things, filing unfounded lawsuits with the intent to harass or injure another; knowingly advancing a claim that was unwarranted under existing law; engaging in conduct which was degrading to a tribunal; and knowingly making false accusations against a judge, including "vituperative and unsupported accusations against a justice of the Superior Court and other members of the bar. Id. at 328-30. Although Muka certainly represents an extreme case, this Court’s concerns for the rights of individuals .who were hauled into court based on Attorney Muka’s baseless claims and the rights of litigants in our courtrooms, including her “utter disregard for the requirements of law and the rights of any person who has the temerity to disagree with her[,]” id. at 330, are relevant to this analysis.
In conclusion, it is my opinion that the sanction recommended by the board, and adopted by the majority, is wholly inadequate and, when compared to discipline imposed upon other members of the bar for a single violation of the disciplinary rules, is disparate.
Although I do not, as the majority suggests, consider “a one-year hiatus” from the practice of law to be “insignificant,” I continue to believe that the sanction in this case, for what is serial misconduct involving deceit and dishonesty, is a nominal sanction that does not respond to this Court’s goal of maintaining the integrity of this honorable profession.
Furthermore, it is my belief that the respondent should not be readmitted to the practice of law unless and until he produces the records that were the subject of a lawfully issued subpoena. This Court has never overlooked an attorney’s refusal to produce records sought by Disciplinary Counsel. We should not do so here.
Accordingly, it is my opinion that the respondent should be suspended from the practice of law for two years and should not be readmitted until he complies with Rule 1.19.

ADDENDUM

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS SUPREME COURT

In Re: Keven A. McKenna
DSC No. 2012-04

*1158
Assistant Disciplinary Counsel’s Memorandum in Response to Court’s Show Cause Order

This Court has issued a Show Cause Order directing Respondent to appear and show cause as to why the Recommendation of the Disciplinary Board should not be accepted. The Disciplinary Board has specifically recommended that this Court find that Respondent has violated Rules 1.19, 3.3, 3.5(d), 7.1, 7.5 and 8.4 of the Rules of Professional Conduct for his various actions. The Board recommended that this Court sanction Respondent by suspending him from the practice of law for one (1) year. Assistant Disciplinary Counsel hereby submits this Memorandum addressing proposed sanctions in order to advise the Court of the undersigned’s position on the recommended sanction prior to the scheduled Show Cause Conference.
Before the Board, Assistant Disciplinary Counsel advocated for the Board to recommend to this Court that Respondent be disbarred upon a finding that Respondent committed all of the alleged violations. It is still Assistant Disciplinary Counsel’s belief that the severity of Respondent’s actions as well as the lack of mitigating factors coupled with his utter disregard for not only this process, but this Court’s authority and the protection of not only the integrity of the profession but the public as well warrants a significant sanction beyond the one (1) year suspension recommended by the Board. The collective actions of Atty. McKenna amounted to serious violations of the Rules of Professional Conduct. In addition to the outright violation of a direct Supreme Court Order and admitted attempts to circumvent this Court’s authority over his law practice, the facts demonstrate a lack of candor amounting to dishonesty in dealing with various tribunals (i.e. Workers’ Compensation Court, Bankruptcy Court and Bankruptcy Trustee). Collectively these actions demonstrate a refusal or inability to recognize his obligations under the Rules of Professional Conduct.
In addition to the collective seriousness of these proven actions, there are aggravating factors warranting a harsher penalty. Notably, in this case, the actions that gave rise to the current charges all carry a common theme—Respondent’s disregard for the authority of the various courts and judiciary. In fact, Respondent’s reaction to this Court’s investigation, by and through the undersigned, must also be taken into consideration in the issuance of the appropriate -sanction. In the face of an investigation, Atty. McKenna first filed an action in Federal Court asserting various claims attacking the individuals who questioned his actions. See ie. McKenna v. DeSisto, C.A. No. 11-602 (U.S.Dist.Ct., RI). In this Federal Court Complaint, Respondent not only challenged the authority of the Disciplinary Board and the undersigned but also attacked this Court’s authority. Respondent maintained that the disciplinary investigation was unconstitutional in violation of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as well as the Rhode Island Constitution, Art. I, §§ 2 (due process), 6 (search and seizure) and 21 (free speech and right to petition) and the statutory privacy rights established under R.I.G.L. § 9-1-28.1 et seq. Respondent inter alia asked the Federal Court to declare that “Chief Justice Sut-tell” lacked the constitutional authority to appoint the undersigned and asked the Federal Court to stay the disciplinary investigation. Finally, Atty. McKenna asked the Federal Court to declare R.I. Supreme Court Disciplinary Rules (Art. Ill, Rule 11 and Art. V, Rules 1.15 and 1.19) unconstitutional in violation of the Separation of *1159 Powers doctrine. The Federal District Court however, dismissed the action based on the abstention doctrine. On appeal, the First Circuit affirmed the District Court’s decision and held that the delegation of authority to the R.I. Supreme Court and its Disciplinary Board to oversee attorney conduct is “not flagrantly unconstitutional on its face.” McKenna v. DeSisto, C.A. 12-2217, Judgment (June 10, 2013).
Thereafter, Respondent filed yet another Federal Court action seeking declaratory relief and an injunction preventing the named defendants—a member of the Board and two disciplinary counsel appointed to investigate and present the complaint against him to the Board—from holding their positions and from enforcing the Code of Professional Conduct against him. McKenna v. Gershkoff, 2013 WL 336)368, *1, 2013 U.S. Dist. LEXIS 93)68, 1-2 (D.R.I. July 3, 2013). The Federal District Court again dismissed the action based on the abstention doctrine. Id.
While flighting the actions in the Federal Court, Respondent opened another front and filed an action in the State Court against Assistant Disciplinary Counsel and the entire Disciplinary Board on the eve of the hearing before the Disciplinary Panel. See McKenna v. DeSisto, et al. C.A.2013-125) (March 17, 2013). In this State Court action, Respondent again sought to stop the disciplinary action by claiming that the Supreme Court lacked authority to appoint the Disciplinary Board or the undersigned. Respondent also alleged in this State Court action that the Board, including particularly, Chairperson, Laura Pistauro was biased and should recuse themselves. The Superior Court, however, again refused Respondent’s attempt to circumvent the lawful authority of the Supreme Court.
Respondent’s conspiracy theory has been played out in the Federal Courts, in the State Courts and before the Disciplinary Board. Respondent’s continual reliance on a theory of conspiracy against him coupled with his unwillingness to accept the authority this Court merits a higher form of discipline than recommended by the Board. For that reason, Assistant Disciplinary Counsel submits that the Board’s Recommendation of one (1) year suspension is insufficient to address Respondent’s cumulative actions. Although Assistant Disciplinary Counsel believes his initial recommendation is warranted, in light of the Board’s current recommendation, Assistant Disciplinary Counsel will be recommending during conference that this Court impose a sanction of four (4) years suspension.
Respectfully submitted,
Assistant Disciplinary Counsel,
/s/ Marc DeSisto
Marc DeSisto, Esq. (# 2575)
DESISTO LAW
211 Angelí Street
Providence, RI 02906
Phone: (401)272-4442
Fax: (401)272-9937
Email: marc@desistolaw.com