**In the Matter of Angelo A. MOSCA, III.**

**No. 96–587 M.P.**

Supreme Court of Rhode Island.

Dec. 19, 1996.

David Curtin, Chief Disciplinary Counsel for Petitioner.

Joseph A. Kelly, Providence, for Respondent.

## OPINION

PER CURIAM.

This matter is before the court pursuant to a decision and recommendation of the Supreme Court Disciplinary Board (Board) that the respondent, Angelo A. Mosca III, be suspended from the practice of law for a period of ninety days. Article III, Rule 6(d), of the Supreme Court Rules of Disciplinary Procedure provides, in part:

"If the [Disciplinary] Board determines that a proceeding should be * * * concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The pertinent facts that necessitate this disciplinary proceeding arise from respondent's misconduct relating to his serving as closing agent in three unrelated real estate transactions and his misguided attempts to avoid taking responsibility for his misconduct when confronted with disciplinary complaints. Those attempts to avoid responsibility resulted in the filing of three separate petitions for disciplinary action that were consolidated for hearing before the Board.

In the first transaction respondent served as closing agent to a residential real estate sale, and at the closing he withheld $100 from the proceeds due to the seller, Geraldine A. Gregorio, for payment of the seller's pro rata share of an outstanding water bill. The respondent retained those funds in a client account but did not pay that bill. When the seller became aware that the bill had not been paid, she made several requests to respondent for information relating to the payment of the bill. Her requests for information were not answered.

Unable to receive a response to her inquiries Gregorio filed a complaint with the disciplinary counsel regarding the actions of re-

spondent. The respondent failed to reply to the request of the disciplinary counsel for an explanation of his conduct until a petition was filed with this court to compel an answer under threat of suspension from the practice of law. On December 18, 1995, respondent submitted to the disciplinary counsel a copy of a purported letter dated December 10, 1995, addressed to Gregorio and forwarding a check for reimbursement for the full amount withheld from the closing proceeds. That statement was false as no reimbursement check had been forwarded as of that date, and the purported letter of December 10 had not been sent. It was not until January 15, 1996, that respondent reimbursed Gregorio.

The second real estate transaction which led to the filing of a formal complaint against respondent also relates to his failure to make timely distributions of funds to the seller. On May 26, 1994, respondent acted as settlement agent when Maureen and David Jobes sold a parcel of residential real estate in Norwood, Massachusetts. At the closing, the sum of $800 was withheld from the sellers' proceeds to be applied to the sellers' pro rata share of real estate taxes. The exact amount owed by the sellers had not been determined at the time of closing, and the funds were held by respondent in his escrow account pending receipt of the tax bill. When it was determined that the sellers' pro rata share of the tax bill was $715.29, they were entitled to a refund of $84.71 from the funds held in escrow by respondent. However, respondent forwarded the entire $800 he held in escrow in payment of the real estate taxes to the city of Norwood, without deducting the amount due to the sellers.

Maureen Jobes made several inquires to respondent regarding the refund to which she and David Jobes were entitled. Those inquiries were not answered by respondent. Mrs. Jobes subsequently filed a complaint with the disciplinary counsel regarding respondent's failure to remit the funds or to answer her questions. On December 8, 1995, during the course of an investigation into the Jobeses' complaint, respondent stated to the disciplinary counsel that he had refunded to the Jobeses the money that they were entitled to receive. This statement was false. On January 5, 1996, respondent finally made payment to the Jobeses.

The final matter that brings respondent before the court relates to his representation of Robert and Myra Dionne and his actions as closing agent for the settlement of a refinancing loan on their home located in Smithfield, Rhode Island. The closing was held on November 5, 1992, and at the closing respondent withheld the sum of $2,076.08 for payment of property taxes. Subsequent to the statutory period of rescission applicable to refinancing loans, respondent caused the appropriate documents securing the refinancing loan to be recorded in the town of Smithfield, and appropriate disbursement checks were prepared by respondent. A check drawn on respondent's client account was prepared by respondent for payment of the taxes at that time but either was not forwarded to the town or was returned, unnegotiated, to respondent by the town. It is undisputed that this check was not presented for payment and that those funds remained in respondent's client account until well after the closing. The respondent subsequently ceased using that client account, that account was closed, and respondent appropriated the funds contained therein.

In April of 1993 the holder of the mortgage on the Dionnes' residence paid the above-noted tax plus a late penalty in the amount of $83.04 to the town from a tax-escrow account established for the Dionnes. The Dionnes did not become aware that respondent had failed to pay the real estate taxes on their behalf until February of 1995 when they were notified by the mortgage holder that their monthly mortgage payments would be increased to make up for the shortfall in the tax-escrow account caused by the April 1993 payment of the tax, plus penalty. Upon learning that respondent had failed to pay the real estate taxes, the Dionnes made a number of attempts to contact him to obtain information regarding the escrowed funds. When those attempts went unanswered, they filed a complaint against respondent with the disciplinary counsel.

As he had in the two previously noted matters, respondent compounded his disci-

plinary difficulties by engaging in a course of conduct intended to mislead the Dionnes, their mortgage holder, and the disciplinary counsel. When he received the complaint filed by the Dionnes, respondent reviewed the original file relating to the refinancing of their loan. Contained therein was the unnegotiated check for payment of the real estate taxes. However, rather than acknowledge that a mistake had been made, he attempted to cover up that mistake by fabricating evidence that he had paid the tax from funds in his escrow account. The respondent procured from his files a canceled check that had been paid to the mortgage holder in an unrelated transaction. He then altered that check to make it appear that he had forwarded payment of those funds to the mortgage holder, along with an explanatory cover letter, in January of 1993. When confronted with this altered check, respondent admitted to the disciplinary counsel his attempts at deception. He submitted payment to the Dionnes in the amount of $2,350 in December of 1995, after having been directed to do so by the disciplinary counsel.

■ Relying on these undisputed facts, the Board reached the inescapable conclusion that respondent had failed to adhere to the obligations imposed upon all attorneys by the Rules of Professional Conduct. Article V, Rule 1.15(a) of the Rules of Professional Conduct requires attorneys to hold funds in their possession that belong to a client or some other third person in a separate account from the lawyers' own funds. By failure continuously to maintain the funds of the Dionnes in a client account, respondent clearly violated this provision. Rule 1.15(b) requires that when a lawyer holds funds in his or her possession that belong to a client or a third person, the lawyer shall promptly deliver those funds to the person or the entity entitled to receive them. In each of these transactions respondent failed to make timely distribution of funds in his possession.

The Board determined, and we agree, that respondent's failure to handle his client funds properly was the result of inadvertence rather than intentional misconduct. The record reveals that at the time of these transactions, respondent was an unseasoned attorney who was responsible for conducting a large number of real estate closings. Numerous deposits and disbursements were made through his client accounts, and he had failed to implement adequate policies and procedures to reconcile his account transactions and to keep track of client funds. Had he implemented such basic procedures as account reconciliation on a regular basis, these problems could have been avoided or discovered before the intervention of disciplinary proceedings.

■ However, it is respondent's conduct when confronted with these disciplinary complaints that this court finds most egregious. Attorneys admitted to the practice of law in this State have an affirmative obligation to cooperate with disciplinary authorities when a disciplinary complaint is lodged against them. Rule 8.1 of the Rules of Professional Conduct makes it clear that it constitutes professional misconduct for a lawyer in a disciplinary proceeding to fail to respond to a disciplinary complaint or knowingly to make a false statement of material fact in responding to such a complaint. The respondent engaged in a persistent pattern of deception or failure to respond to the Office of the Disciplinary Counsel. This intentional conduct cannot be condoned.

■ Moreover, his attempts to mislead the Dionnes, their mortgage holder, and the disciplinary counsel by fabricating an altered check to induce these parties to believe that the property taxes had been paid violates Rule 8.4(c) as well. That rule provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The record before the court supports a finding by clear and convincing evidence that the respondent knowingly violated Rules 8.1 and 8.4(c).

■ We concur with the recommendation of the Board that the respondent's conduct warrants the imposition of a suspension. Therefore, we order that the respondent, Angelo A. Mosca III, be suspended from the practice of law for a period of ninety days, said period of suspension to commence thirty days from the date of this opinion. In order to protect the interests of his current clients,

the respondent shall file with the clerk of this court either a list of all active clients or a statement by an attorney or attorneys who will assume responsibility to protect those clients' interests. Additionally, we further order that upon his readmission to the practice of law the respondent shall be placed under supervision for a period of one year from the date of his readmission. The respondent must, as a condition precedent to his being allowed to resume the practice of law, submit an acceptable plan of supervision by other attorneys in his office to the disciplinary counsel. Said plan of supervision must be submitted no later that sixty days from the effective date of this order of suspension.